```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  :
NEKPEN OSUAN,                                                 :
                                                              :
                              Plaintiff,                      :
                                                              :       18cv151
              -against-                                       :
                                                              :       OPINION & ORDER
THE CITY OF NEW YORK, et al.,                                 :
                                                              :
                              Defendants.                     :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiff Nekpen Osuan brings this employment discrimination and retaliation action against the City of New York (the "City"), Timothy Martin, and Dennis McGowan (together, "Defendants") under 42 U.S.C. § 1983 and the New York City Human Rights Law (the "NYCHRL"). Defendants move to dismiss the fourth amended complaint (the "Complaint," ECF No. 43) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

        The allegations in the Complaint are presumed true on this motion. From May to September of 2016, Osuan, a Nigerian national, worked on the analytics team at the New York City Department of Buildings ("DOB"). (Compl. ¶¶ 13, 16–17.) During those four months, Osuan claims she was the only non-U.S. citizen on the team. (Compl. ¶ 17.) Osuan reported directly to Martin, the Chief Analytics Officer, and was approved for a flexible schedule that allowed her to care for her family. (Compl. ¶¶ 18, 20–21.) According to Osuan, Martin never criticized her for arriving late as long as she worked seven hours per day and completed her assignments. (Compl. ¶¶ 22–24.)

In June 2016, Osuan assisted Martin in reviewing job applications for an open analytics position with DOB. (Compl. ¶ 26.) According to Osuan, Martin rejected several qualified candidates because of their alienage or immigration status, remarking that foreign applicants were not fluent in English, "would have to leave" once their work authorization expired, and "would not be helpful [or] of any use." (Compl. ¶¶ 26–28.) In late August 2016, Osuan complained to DOB's Legal/Human Resources department about Martin's remarks. (Compl. ¶ 33.) Two weeks later, Martin chastised Osuan for arriving late and completing her time card incorrectly. (Compl. ¶ 35.) Osuan protested to Martin that her U.S.-citizen co-workers were not reprimanded for similar infractions. (Compl. ¶¶ 36–37.) Three days later, McGowan, an Executive Director of Internal Affairs at DOB, terminated Osuan without explanation. (Compl. ¶¶ 11, 39.)

## DISCUSSION

I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). The court must construe all inferences in the plaintiff's favor. Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015).

II. Federal Claims

A. § 1981 Discrimination

Osuan invokes § 1983 to allege a violation of her civil rights guaranteed under

§ 1981. See Duplan v. City of New York, 888 F.3d 612, 621 (2d Cir. 2018). Section 1981 prohibits public and private actors from discriminating on the basis of alienage in the making and enforcement of employment contracts. Anderson v. Conboy, 156 F.3d 167, 170, 180 (2d Cir. 1998). A plaintiff must allege that (1) she is an alien; (2) the defendant intended to discriminate against her on the basis of her alienage; and (3) the discrimination concerned one of § 1981's enumerated activities—here, the termination of an employment contract. See Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000); Lauture v. Int'l Bus. Mach. Corp., 216 F.3d 258, 260–61 (2d Cir. 2000). Claims under § 1981 are analyzed similarly to those brought under Title VII. Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010).

Osuan claims that Martin discriminated against her based on her alienage by terminating her under the pretext of lateness and an incorrect time card.[1] The first element—Osuan's alienage status—is not in dispute, and termination is a well-recognized "enumerated activity" under § 1981. See Lauture, 216 F.3d at 261. Accordingly, this Court focuses on the second prong—Martin's discriminatory intent. Osuan bases her allegations on: (1) Martin's remarks about aliens and their inability to contribute to DOB; and (2) the fact that she was the only alien on her team and her non-alien co-workers were not reprimanded for their tardiness.

Defendants argue that this claim must be dismissed because Osuan has not established a prima facie case of discrimination under the McDonnell Douglas burden-shifting framework. But that analysis—normally applied on summary judgment—is inappropriate at the pleading stage. "[A] plaintiff is not required to plead a prima facie case . . . to defeat a motion to dismiss." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015) (emphasis added). Rather, "the plaintiff's burden [at the pleading stage] is minimal—[she] need only

---

[1] Osuan has dropped her discrimination claims against McGowan. (See Pl.'s Oct. 26, 2018 Mem. of Law in Opp. to Defs.' Mot. to Dismiss, ECF No. 54, at 3 n.1.)

plausibly allege facts that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." Vega, 801 F.3d 72 at 86–87 (emphasis added) (citation and quotation marks omitted).

Discriminatory comments may be indicative of intent, but only where the remarks have a "causal nexus" to the termination decision. Williams v. Victoria's Secret, 2017 WL 1162908, at *8 (S.D.N.Y. Mar. 28, 2017). A court must consider:

> [1] who made the remark (i.e., whether it was a decision-maker, a supervisor, or a low-level co-worker); [2] when the remark was made in relation to the employment decision at issue; [3] the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and [4] the context in which the remark was made (i.e., whether it was related to the decision-making process).

Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149–50 (2d Cir. 2010).

Here, the first and third factors weigh in Osuan's favor. Though Martin did not fire her directly, his supervisory oversight suggests that he had input in the decision. See, e.g., Ahmed v. Heartland Brewery L.L.C., 2007 WL 2125651, at *4–5 (S.D.N.Y. July 25, 2007) (explaining that a plaintiff must demonstrate that a non-terminating defendant had "substantial input" in the decision to impute liability). And a reasonable juror could certainly consider Martin's comments to be discriminatory towards aliens.

However, the second and fourth factors cut against an inference of discriminatory intent. Osuan alleges that Martin made his comments while they screened DOB applicants in June. His remarks appear to predate Osuan's termination by at least two months. Judges in this district have found similar temporal gaps insufficient to suggest a discriminatory motive. See, e.g., Moore v. Verizon, 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (finding non-supervisor's remarks non-actionable where they occurred "at least months" before an adverse employment action and did not "arise[] in a context at all related to the decision . . . to terminate

4

Plaintiff"); Callistro v. Cabo, 2013 WL 322497, at *7 (S.D.N.Y. Jan. 25, 2013) (declaring comments not probative of discrimination when made "at least one month" before any discussion of plaintiff's termination began).

Even in the fifth version of her complaint, Osuan pleads no facts that connect Martin's remarks to her termination. Notably, Martin's comments occurred in the context of hiring decisions for other individuals. And Osuan does not allege that Martin made any discriminatory comments with respect to her own alienage. These deficiencies are fatal to Osuan's claim. As for Osuan's alternate discrimination theory, she alleges no specific, articulable facts beyond a "formulaic recitation" that "similarly situated employees" were treated differently. Farsetta v. Dep't of Veterans Affairs, 2017 WL 3669561, at *5 (S.D.N.Y. Aug. 24, 2017) (quoting Vega, 801 F.3d at 86). For all of these reasons, Osuan's § 1981 discrimination claim is dismissed.

B. § 1981 Retaliation

Osuan also claims that Martin and McGowan violated § 1981 by retaliating against her for her human resources complaint. Section 1981 encompasses retaliation claims. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008). "[F]or a retaliation claim to survive . . . a motion to dismiss, a plaintiff must plausibly allege that: (1) defendants . . . took an adverse employment action . . . against [her]; (2) because [she] has opposed any unlawful employment practice." Vega, 801 F.3d at 90.[2]

Defendants contend that Osuan's claim must be dismissed because the allegations

---

[2] Defendants assert that this Court should only consider Osuan's retaliation claim in the context of a First Amendment protected speech analysis. But Osuan's allegations are not so narrow—though Osuan's human resources complaint may be considered speech on a matter of public concern, see infra Part II(C), it may also be construed as an employee's opposition to an unlawful employment practice. See, e.g., Giscombe v. N.Y.C. Dep't of Educ., 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014) (explaining how an "[i]nformal complaint[] to supervisors" constitutes a protected activity for retaliation purposes). And Defendants cite no case on point for why Osuan's allegations should not be analyzed under both the § 1981 and First Amendment frameworks.

are only "upon information and belief" that Martin and McGowan learned of her complaint before she was terminated. Once again, Defendants focus on the McDonnell Douglas prima facie elements, which require a plaintiff to produce evidence "that the defendant knew of the protected activity." Hicks, 593 F.3d at 164. But that inquiry "is an evidentiary standard, <u>not a pleading requirement</u>." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (emphasis added). And the factual issues concerning whether and how Defendants knew about Osuan's complaint are better explored during discovery. See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) ("The Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." (citation and quotation marks omitted)).

Defendants do not dispute that Osuan's termination was an adverse employment action. Accordingly, this Court focuses on the causation prong. "To adequately plead causation, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Duplan, 888 F.3d at 625 (citation omitted). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." Duplan, 888 F.3d at 625 (citation omitted). "While the Second Circuit 'has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship.'" Kirkweg v. N.Y.C. Dep't of Educ., 2013 WL 1651710, at *5 (S.D.N.Y. Apr. 4, 2013) (alteration in original) (quoting Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010)).

Here, Osuan lodged a complaint with human resources about Martin's

6

behavior and was terminated without explanation only two weeks later. Such close proximity satisfies the temporal connection standard. See, e.g., Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) (holding a three-week period sufficient to show temporal proximity); Kirkweg, 2013 WL 1651710, at *5 (explaining that even a two- to three-month gap may suggest causation at the pleading stage). And accepting all pleaded facts as true, Osuan had no disciplinary history that would otherwise explain her supervisor's decision. Thus, the allegations in the Complaint are sufficient to "nudge[] [Osuan's] claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570, and Defendants' motion to dismiss Osuan's § 1981 retaliation claim is denied.

   C. First Amendment Retaliation

Osuan further alleges that Martin and McGowan retaliated against her for protected First Amendment activity. To withstand a motion to dismiss on a First Amendment retaliation claim, a plaintiff must demonstrate that: "(1) she has engaged in protected First Amendment activity; (2) [she] suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action." Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007). The First Amendment protects a public employee's speech when made "in . . . her capacity as a citizen regarding a matter of public concern." Smith v. Cty. of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015). A court must consider the speech's "content, form, and context" and whether it had a "broader public purpose" that was not "calculated [solely] to redress [the plaintiff's] personal grievances." Ruotolo v. City of New York, 514 F.3d 184, 189 (2d Cir. 2008).

As a threshold matter, Defendants contend that Osuan's complaint was not protected under the First Amendment. But both Osuan's allegations and governing law

7

contradict this argument.  First, discrimination in a government workplace is a matter of public concern.  See Cotarelo v. Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247, 252 (2d Cir. 2006) (collecting cases).  Second, Osuan did not make her complaint subject to any official duty in her position, and so she spoke in her capacity as a citizen.  Cf. Garcetti v. Ceballos, 547 U.S. 410, 421 (2006) (dismissing First Amendment claim where speech at issue was part of a memo required by the plaintiff's job responsibilities).  Third, Osuan's complaint to human resources could be construed as relating to a broader public purpose because she raised this issue with respect to job applications by non-citizens, and not her own personal experience at DOB.

Defendants also argue that Osuan does not adequately allege her human resources grievance because the Complaint fails to identify the rejected candidates, their prospective positions, or their alienage status.  But this argument focuses on the Complaint in this action, rather than the actual speech at issue—Osuan's human resources grievance.  The factual allegations pertaining to the grievance could not be more explicit—Osuan "specifically referenced her concern that Defendant Martin was rejecting candidates based not on their professional qualifications, but based solely on their alienage or citizenship status."  (Compl. ¶ 33.)  And the case on which Defendants' argument relies, Ortiz v. Russo, 2015 WL 1427247 (S.D.N.Y. Mar. 27, 2015), does not apply here.  In that case, the district court found that the plaintiff had not met the "content, form, and context" standard because the First Amendment claim contained no reference to any speech at all.

As for causation, "a plaintiff can establish a causal nexus between her protected speech and an adverse employment action either 'indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus.'"  Roper v. Hynes, 2006 WL

2773032, at *8 (S.D.N.Y. Sept. 27, 2006) (quoting Mandell v. Cty. of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003)). Much like her § 1981 retaliation claim, Osuan sufficiently pleads a causal connection through the two-week interval between her speech and her termination. And it bears repeating that discovery will shed light on whether Defendants were aware of her speech and, if so, whether it influenced their decision. For all of these reasons, Defendants' motion to dismiss Osuan's First Amendment retaliation claim is denied.

### D. Qualified Immunity

Martin and McGowan assert that they are entitled to qualified immunity in their capacity as government officials. "[A] qualified immunity defense can be presented in a Rule 12(b)(6) motion, but . . . the defense faces a formidable hurdle when advanced on such a motion and is usually not successful." Field Day, LLC v. Cty. of Suffolk, 463 F.3d 167, 191–92 (2d Cir. 2006); see also Schiller v. City of New York, 2009 WL 497580, at *7 (S.D.N.Y. Feb. 27, 2009).

"[I]n evaluating a qualified immunity defense, courts must examine two factors: (1) whether the plaintiff has made out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 55 (2d Cir. 2014) (citation and quotation marks omitted). Osuan has already cleared the first hurdle—as explained above, she has adequately pleaded retaliation in violation of her rights under § 1981 and the First Amendment. As for the second prong, an employee's right to be free from retaliation on the basis of protected activity—whether it be opposing discriminatory practices or engaging in protected speech—is well established. And in any event, qualified immunity "is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996).

E. Monell Claims

Osuan asserts § 1983 claims against the City under two theories: (1) the City failed to train Defendants Martin and McGowan in the laws against alienage discrimination; and (2) Martin and McGowan were policymaking government officials responsible for establishing and implementing unconstitutional practices. To impute liability to the City, Osuan must plead facts suggesting the existence of "(1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to (3) denial of a constitutional right." Torraco v. Port Auth. of N.Y. and N.J., 615 F.3d 129, 140 (2d Cir. 2010) (citation and quotation marks omitted).

Osuan's first theory—failure to train—recites the desired legal conclusion without a "shred of particularization." Rodriguez v. City of New York, 649 F. Supp. 2d 301, 308 (S.D.N.Y. 2009); see also Gantt v. Ferrara, 2017 WL 1192889 (S.D.N.Y. Mar. 29, 2017) (stating that conclusory allegations do not suffice for "failure to train" claims and collecting cases). And a claim based on only conclusory allegations will not survive a motion to dismiss. Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006).

Her second theory—that Martin and McGowan had final policymaking authority to establish unconstitutional practices for the city—is also threadbare. "The critical characteristic of final policymakers when employment is at issue is whether the municipal official has the authority to formulate the rules governing personnel decisions rather than authority to make decisions pursuant to those rules—e.g. the hiring and firing of subordinates." Chin v. N.Y.C. Hous. Auth., 575 F. Supp. 2d 554, 562 (S.D.N.Y. 2008). Osuan does not plead any facts suggesting "that [Martin or McGowan] [had] any authority, let alone final authority, to define or make a City policy generally applicable to all City employees—or even, for that matter, to all [DOB] employees." Collins v. Stasiuk, 56 F. Supp. 2d 344, 345 (S.D.N.Y. 1999). "The

10

power to make employment decisions alone does not in itself give rise to potential Section 1983 liability." Peterson v. City of New York, 2018 WL 5811432, at *6 (S.D.N.Y. Nov. 6, 2018) (citation and quotation marks omitted). And Plaintiff's statement during oral argument that discovery will reveal whether there is a viable Monell claim effectively concedes that the Complaint fails to meet its pleading requirement. (See Nov. 16, 2018 Oral Arg. Tr. 15:8–9.)

For all of these reasons, Osuan's Monell claims are dismissed. And because city officials may not be held liable in their official capacities unless the plaintiff can show an underlying unconstitutional municipal policy or custom, Lore v. City of Syracuse, 670 F.3d 127, 168 (2d Cir. 2012), Osuan's claims against Martin and McGowan in their official capacities are also dismissed.

III. NYCHRL Claims

Osuan's discrimination and retaliation claims under the NYCHRL are given "an independent liberal construction," Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (citation omitted), in light of the statute's "uniquely broad and remedial purposes," Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted). As a preliminary matter, because this Court has sustained Osuan's federal retaliation claims, her NYCHRL retaliation claim also survives.

To establish discrimination under the NYCHRL, "the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her [protected characteristic].'" LaSalle v. City of New York, 2015 WL 1442376, at *5 (S.D.N.Y. Mar. 30, 2015) (quoting Williams v. N.Y.C. Housing Auth., 872 N.Y.S.2d 27 (N.Y. App. Div. 2009)). However, "[t]he standard under the NYCHRL is . . . not boundless . . . ." LeBlanc v. United Parcel Serv., 2014 WL 1407706, at *13 (S.D.N.Y. Apr. 11,

11

2014). Osuan's discrimination claim here suffers from the same defects that plague her federal allegations—namely, she fails to connect Martin's comments, which were not directed at her, to her termination several months later. And Osuan pleads nothing beyond a conclusory assertion about non-alien co-workers to support any showing of similarly situated people with disparate treatment. For that reason, her discrimination claim under the NYCHRL is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part and denied in part. Osuan's federal and city discrimination claims, as well as her Monell claims against the City and the individual defendants in their official capacities, are dismissed with prejudice.[3] Defendants' motion to dismiss the federal and NYCHRL retaliation claims is denied.

The parties are directed to appear for a status conference on July 9, 2019 at 9:30 a.m. The Clerk of Court is directed to terminate the motion pending at ECF No. 44.

Dated:    June 20, 2019
             New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

---

[3] Osuan has been provided two pre-motion conferences addressing the deficiencies in her Complaint, as well as four chances to amend. See DigitAlb, Sh.a v. Setplex, LLC, 284 F. Supp. 3d 547, 556–57 (S.D.N.Y. 2018) (citation and quotation marks omitted) ("Courts have dismissed claims with prejudice on the basis that the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies.").

12